IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 13-cv-03363-CMA-KMT

SECURITIES AND EXCHANGE COMMISSION,

 Plaintiff,

v.

JESSE W. ERWIN, JR.,
SETH A. LEYTON, and
LEWIS P. MALOUF,

 Defendants, and

DANIEL SCOTT CODDINGTON, and
CODDINGTON FAMILY TRUST,

 Relief Defendants.

___

**OPINION AND ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANT SETH A. LEYTON**

___

This matter comes before the Court pursuant to Plaintiff Securities and Exchange Commission's ("SEC") Motion For Default Judgment Against Seth A. Leyton (the "Motion" or "Motion for Default Judgment") (Doc. # 254), to which no response has been filed. For the reasons that follow, the Court grants the Motion and enters default judgment in Plaintiff's favor.

       **I.**  **BACKGROUND**

The record reflects that the SEC served Defendant Seth A. Leyton ("Leyton" or "Defendant") with the Summons and Complaint on January 18, 2014, by personally

1

delivering the pleadings to Leyton. (Doc. # 28.) Leyton failed to file an answer or otherwise respond to the Complaint. The SEC moved for entry of default against Leyton (Doc. # 78), and the Clerk of Court entered default on April 16, 2014. (Doc. # 79.) The SEC filed the instant Motion for Default Judgment on September 18, 2020. (Doc. # 254.)

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, courts must enter a default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain." Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

> [D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

*In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

A default amounts to an admission of liability, and all well-pleaded allegations in the complaint pertaining to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); *Lyons P'ship, L.P. v. D&L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 109 (E.D.N.Y. 2010). "The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-CV-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31,

2019) (citing *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014)). It "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01 Civ. 3137 (HB) (FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

In the context of a default judgment, a plaintiff "must . . . establish that on the law it is entitled to the relief it requests, given the facts as established by the default." *PHL Variable Ins. Co. v. Bimbo*, No. 17-CV-1290 (FB) (ST), 2018 WL 4691222, at *2 (E.D.N.Y. Aug. 30, 2018), *report and recommendation adopted*, No. 17-CV-1290 (FB) (ST), 2018 WL 4689580 (E.D.N.Y. Sept. 28, 2018) (quoting *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, No. 07CV5150 (SJ) (SMG), 2009 WL 3188303, at *2 (E.D.N.Y. Oct. 1, 2009)).

### III.   ANALYSIS

Following a clerk's entry of default, courts follow two steps before granting default judgment. First, a court must ensure it has subject matter and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (holding that default judgment against defendant over whom court has no personal jurisdiction is void). Defects in personal jurisdiction are not waived by default when a party fails to appear or to respond, and the plaintiff bears the burden of proving personal jurisdiction before a default judgment may be entered. *Williams*, 802 F.2d at 1202–03. "Where, as here, the issue is determined on

the basis of the pleadings and affidavits, that burden may be met by a prima facie showing." *Sharpshooter Spectrum Venture, LLC v. Consentino,* No. 09-cv-0150-WDM-KLM, 2011 WL 3159094, at *2 (D. Colo. July 26, 2011) (citing *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011)).

Second, courts must consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. *See Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (plaintiff in a default action did not need to prove complaint's factual allegations; however, judgment must be supported by a sufficient basis in the pleadings).

### A.   JURISDICTION

#### 1.   Subject Matter Jurisdiction

The Court has subject-matter jurisdiction over the SEC's claims that Leyton violated the federal securities laws under Section 22(a) of the Securities Act of 1933 ("Securities Act") and Section 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 77v(a) and 78aa] and 28 U.S.C. § 1331.

#### 2.   Personal Jurisdiction

The Court finds that it has personal jurisdiction over Leyton because service was adequate, *see Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015), and exercising jurisdiction over Leyton comports with constitutional due process demands, *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

First, the Court finds that Plaintiff's service of process on Defendant was

complete and adequate. The record reflects that the SEC served Leyton with the Summons and Complaint on January 18, 2014, by delivering the pleadings to him personally. (Doc. # 28.) Such service satisfied Fed. R. Civ. P. 4(e)(2)(a).

Next, the Court finds that exercising jurisdiction over Defendant comports with constitutional due process demands. Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the "fair warning" requirement of the Due Process Clause is satisfied if the defendant has "purposefully directed: his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to' those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted). According to the Complaint, Leyton is a resident of San Diego, California. However, Leyton made use of the means and instrumentalities of interstate commerce or of the mails and engaged in acts, practices, and courses of business that occurred within the District of Colorado in connection with the violations of law alleged in the Complaint. (Doc. # 1 at ¶¶ 21, 31, 32.) Thus, Leyton has sufficient "minimum contacts" with Colorado, and exercising personal jurisdiction over him would not "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). Therefore, the Court has personal jurisdiction over Leyton.

**B.     FAILURE TO DEFEND**

1.     <u>Defendant's Default</u>

It is manifest from the record that Defendant has defaulted. The SEC served

Leyton the Summons and Complaint on January 18, 2014. (Doc. # 28.) Defendant has nevertheless failed to answer or otherwise respond to the Complaint, and the time to do so has long since expired. *See* Fed. R. Civ. P. 12(a). The Clerk of Court, therefore, properly entered default against Leyton on April 16, 2014.

2. <u>Liability</u>

Based on Defendant's default, the Court treats the well-pleaded allegations in the Complaint as true, and examines the facts alleged in the Complaint to determine whether the SEC established its claims that Leyton knowingly aided and abetted violations by Daniel Dirk Coddington ("Coddington") and his company Golden Summit Investors Group Ltd. ("Golden Summit") of the anti-fraud provisions of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)*,* and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5. *U.S. v. Craighead*, 176 Fed. Appx. 922, 924 (10th Cir. 2006). The Court finds that the SEC's Complaint and the documentation submitted in support of its Motion for Default Judgment provide a "sufficient basis in the pleadings for default to be entered." *Bixler*, 596 F.3d at 762.

The Supreme Court has recognized the SEC has authority to prosecute aiders and abettors to securities violations. *See Janus Capital Grp. Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2309 (2011). To establish aiding and abetting liability, the SEC must prove: "(1) the existence of a primary violation of the securities laws by another; (2) knowledge of the primary violation by the alleged aider-and-abettor; and (3) substantial assistance by the alleged aider-and-abettor in achieving the primary violation." *DBLKM Inc. v. Resolution Trust Corp.*, 969 F.2d 905, 908 (10th Cir. 1992);

6

*see also Geman v. SEC*, 334 F.3d 1183, 1195 (10th Cir. 2003) (upholding administrative law judge's ruling that the defendant aided and abetted securities violations by failing to ensure the firm complied with reporting requirements despite his knowledge of the firm's previous non-compliance).

In this case, the Complaint amply alleges that Coddington and Golden Summit engaged in securities fraud by offering investments in a non-existent "CMO Trading Program" and that Leyton, the owner of the securities brokerage firm, knowingly provided substantial assistance to the fraudulent scheme by, *inter alia*, opening brokerage accounts that enabled Coddington and Golden Summit to misappropriate investors' Collateralized Mortgage Obligations ("CMO") contrary to the terms of the investment agreements with investors. (Doc. # 1 at ¶¶ 1–7, 54–68, 95–102, 117–18, 129–32, 142–47, 158–60, 176, 190.)

Specifically, the undisputed allegations in the Complaint establish that Coddington and Golden Summit violated the anti-fraud provisions of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5, 15 U.S.C. §§ 77q(a), 78j(b), and 17 C.F.R. § 240.10b-5, by offering investments in a non-existent "CMO Trading Program." (Doc. # 1 at ¶¶ 1–7.) By means of false and misleading statements of material fact, Coddington and Golden Summit obtained $8,657,890 in funds from investors. (*Id.* at ¶¶ 84–90.) The allegations also establish that Leyton had knowledge of the primary violations by Coddington and Golden Summit. (Doc. # 1 at ¶¶ 54–68, 95–96, 100–02, 141–42, 145–46.) Leyton also provided substantial assistance to Coddington and Golden Summit in achieving the primary violation by, *inter alia*, a)

7

delaying return of CMOs so that Defendants could take interest payments due to investors; b) opening brokerage accounts to enable investors to transfer their CMOs to Golden Summit but then allowing Coddington to sell or transfer the CMOs out of Golden Summit's account, contrary to the agreements to hold the CMOs as collateral for the CMO Trading Program; c) after learning from two investors that the CMO Trading Program was not successful opening a second brokerage account for Coddington to use in a transaction through which Coddington misappropriated another $9 million from an investor; and d) providing a false letter to reassure the above investor to make it appear Coddington had hypothecated the CMOs when, in fact, Leyton sold the CMOs out of the account. (*Id*. at ¶¶ 54–68, 95–102, 117–18, 129–33, 142–47, 158–60, 190.)

Based on the foregoing, the SEC has established that (1) Coddington and Golden Summit violated the anti-fraud provisions of Section 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 adopted thereunder; (2) Leyton had knowledge of the violations by Coddington and Golden Summit; and (3) Leyton provided substantial assistance to the fraudulent scheme of Coddington and Golden Summit. (*Id.*) Therefore, the SEC has established that Leyton aided and abetted violations by Coddington and Golden Summit of the anti-fraud provisions of the federal securities laws listed above.

    3.    <u>Injunctive Relief</u>

The SEC requests that an injunction be entered that prohibits Leyton from future violations of the anti-fraud provisions of the federal securities laws. An injunction is appropriate upon a showing that "there is a reasonable and substantial likelihood that

the defendant, if not enjoined, will violate securities law in the future." *SEC v. Pros International, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993). In deciding whether to grant an injunction, courts weigh several factors, including the seriousness of the violation, the degree of scienter, the defendant's occupation and opportunities for future violations, the defendant's recognition of the wrongfulness of his conduct, and whether the defendant has given sincere assurances against future violations. *Id.*

The undisputed facts establish that Leyton was a knowing participant in a fraudulent scheme that occurred over two years. Despite the seriousness of his violations, which led to significant losses for investors, Leyton has not recognized the wrongfulness of his conduct or provided any assurances against future violations. The Court finds there is a reasonable and substantial likelihood that Leyton will violate the securities laws in the future. Accordingly, the SEC's request for entry of an injunction is granted.

  4. <u>Damages</u>

Default judgment cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). One of the main reasons for this requirement is to prevent plaintiffs who obtain default judgments from receiving more in damages than is supported by actual proof. *Id.* at 773 n.2. Rule 55(b) provides that "the court may conduct such hearings or order such references as it deems necessary" in order to "determine the amount of damages." A court may enter a default judgment without a hearing when, as is the case here, "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Eighth Dist. Elec. Pension*

*Fund v. Campbell Elec., Inc.*, No. 16-cv-03040-CMA, 2017 WL 1243059, at *2 (D. Colo. Mar. 17, 2017) (quoting *Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)). In making an independent determination of the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Id*. (quoting *Breaking the Chain Found., Inc. v. Capitol Educ. Supp., Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008)); *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *3 (D. Colo. Mar. 29, 2018) (same).

The SEC requests that Leyton be ordered to disgorge $176,909.78 in ill-gotten gains obtained from his fraudulent activities and pay prejudgment interest of $69,977.29 for a total of $246,887.07. *See SEC v. Maxxon, Inc.*, 465 F. 3d 1174, 1179 (10th Cir. 2006) (explaining that courts are vested with broad discretion to order disgorgement of ill-gotten gains against a defendant in SEC injunctive actions). The SEC also moves the Court to impose a civil penalty against Leyton equal to his gross pecuniary gain of $176,964 under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §§ 77t(d) and 78u(d)(3). The Court addresses each request in turn.

    a.    Ill-gotten gains

The SEC has tendered Mr. Matticks' affidavit to establish the amount of damages owed by Leyton. The affidavit establishes that Leyton received $85,830.94 of misappropriated investors' funds plus $91,078.84 as his share of the brokerage firm's profits on the sales of investors' CMOs, which transactions were contrary to Golden Summit's agreements with the investors. Therefore, the SEC has demonstrated that

Leyton received net, ill-gotten gains of $176,909.78 from his involvement in fraudulent activities. This disgorgement amount does not encompass the more than a million dollars that Leyton's brokerage firm made on the transactions with Golden Summit and Coddington, but rather includes the $91,078.84 that was Leyton's share of those profits plus secret payments totaling $85,830.94 of misappropriated investors funds that Coddington paid to Leyton.

Ordering Leyton to disgorge a total of $176,909.78 is consistent with the holding in *Liu v. SEC*, 140 S. Ct. 1936 (2020), in which the Supreme Court affirmed a district court's authority to order disgorgement "that does not exceed the wrongdoer's net profits and is awarded for victims." *Id.* at 1940. The Supreme Court also noted that to properly calculate net profits the court must deduct certain "legitimate" expenses. *Id.* at 1950. In the instant case, the SEC is seeking the bribes that Coddington paid to Leyton, and Leyton's portion of the net profits that the brokerage firm earned on the sales of investors' CMOs, rather than the full amount earned by the brokerage firm from the sales. In addition, the disgorgement is "awarded for victims" because the SEC represents that it plans to distribute any funds collected from Leyton to investors.

    b.  *Prejudgment interest*

The SEC also requests prejudgment interest. The SEC is entitled to prejudgment interest on the disgorgement amount "based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 21 U.S.C. § 6621(a)(2)." *SEC v. Platforms Wireless, Int'l Corp.,* 617 F.3d 1072, 1099 (9th Cir. 2010). The SEC calculated the amount of prejudgment interest on disgorgement of

$176,909.78 from November 30, 2011, through September 30, 2020, to be $69,977.29. Accordingly, the Court orders Leyton to disgorge $176,909.78, plus prejudgment interest of $69,977.29, for a total of $246,887.07.

    c.  *Civil penalty*

  In addition, the SEC requests that the Court impose a civil penalty against Leyton equal to his gross pecuniary gain of $176,964 under Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §§ 77t(d) and 78u(d)(3). These sections provide that where a violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and directly or indirectly resulted in, or created a significant risk of "substantial losses to other persons," third-tier penalties are permitted. *Geman*, 334 F.3d at 1196. Courts have discretion in determining the amount of the penalty assessed "in light of the facts and circumstances" of the case, not exceeding the "gross amount of pecuniary gain" to the defendant as a result of the violation or up to $150,000 for each violation. 15 U.S.C. §§ 77t(d), 78(d)(3); *SEC v. Mantria Corp.*, No. 09-cv-02676-CMA-MJW, 2012 WL 3778286, at *3 (D. Colo. Aug. 30, 2012).

  In this case, the uncontested facts establish that Leyton aided and abetted Coddington and Golden Summit in a scheme involving fraud and deceit, which resulted in a near-total loss of investors' funds and the majority of CMOs that were invested in the scheme. (Doc. # 1 at ¶ 4.) On these facts, the Court finds that entry of a third-tier civil penalty equal to Leyton's gross pecuniary gain of $176,410 is appropriate.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- the SEC's Motion for Default Judgment against Seth Leyton (Doc. # 254) is GRANTED;

- Defendant Seth A. Leyton is permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)  to employ any device, scheme, or artifice to defraud;

    (b)  to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)  to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;

- as provided in Fed. R. Civ. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of the Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a);

13

- Defendant Leyton is permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

    (a)   to employ any device, scheme, or artifice to defraud;

    (b)   to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)   to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser;

- as provided in Fed. R. Civ. P. 65(d)(2), the foregoing paragraph also binds the following who receive actual notice of the Final Judgment by personal service or otherwise: (a) Defendant's officers, agents, servants, employees, and attorneys; and (b) other persons in active concert or participation with Defendant or with anyone described in (a);

- Defendant Leyton is liable for disgorgement of $176,964.00, representing net profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $69,374.73, and a civil penalty in the amount of $176,964.00 pursuant to Section 20(d) of the

Securities Act and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §§ 77t(d) and 78u(d)(3), for a total of **$423,302.73**;

- Defendant Leyton shall satisfy this obligation by paying $423,302.73 to the Securities and Exchange Commission within **30 days** after entry of Final Judgment;

- Defendant Leyton may transmit payment electronically to the Commission, which will provide detailed ACH transfer/Fedwire instructions upon request. Payment may also be made directly from a bank account via Pay.gov through the SEC website at http://www.sec.gov/about/offices/ofm.htm. Defendant may also pay by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission, which shall be delivered or mailed to

    Enterprise Services Center
    Accounts Receivable Branch
    6500 South MacArthur Boulevard
    Oklahoma City, OK 73169

    and shall be accompanied by a letter identifying the case title, civil action number, and name of this Court; Seth A. Leyton as a defendant in this action; and specifying that payment is made pursuant to the Final Judgment;

- Defendant Leyton shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant;

- The Commission may enforce the Court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law, including but not limited to, moving for contempt at any time after 30 days following entry of the Final Judgment. The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.,* and moving for civil contempt for the violation of any Court orders issued in this action. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961;

- The Commission shall hold the funds (collectively, the "Fund") until further order of this Court. The Commission may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the Fund;

- Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that he is entitled to, nor shall he further benefit by, offset or

16

reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action;

- solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the Complaint are true and admitted by Defendant, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Final Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation by Seth A. Leyton of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19);

- there being no just reason for delay, pursuant to Fed. R. Civ. P. 54(b), the Clerk of Court is ordered to enter judgment in favor of the SEC and against Defendant Seth A. Leyton in the amount of $423,302.73, forthwith and without further notice; and
- this Court shall retain jurisdiction over this matter for the purposes of enforcing the terms of the Final Judgment.

DATED: December 11, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge