IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 13-cv-03363-CMA-KMT

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

JESSE W. ERWIN, JR., and
LEWIS P. MALOUF,

    Defedants,

DANIEL SCOTT CODDINGTON,

    Relief Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT JESSE W. ERWIN, JR.**

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment Against Jesse W. Erwin, Jr. (Doc. # 240), wherein the Securities and Exchange Commission (the "Commission") moves for summary judgment against Defendant Jesse W. Erwin, Jr., on all claims against him. Mr. Erwin failed to respond to the Motion. For the following reasons, the Motion is granted.

### I.     BACKGROUND

In December 2013, the Commission filed this civil action against thirteen defendants and five relief defendants based on their respective roles in fraudulently inducing more than 30 investors to transfer approximately $18 million in cash and

1

approximately $11.4 million in collateralized mortgage obligations ("CMOs") to entities controlled by Mr. Erwin and his co-defendant Daniel Dirk Coddington. In reality, only 60- to 70% of the money Mr. Coddington and Mr. Erwin received from investors was used to purchase CMOs. They diverted, on average, approximately 30% of the investors' funds for their own personal use and for purposes other than for purchasing CMOs. *See* (Doc. # 241 at 8–27 (Erwin Plea Agreement)).

In October 2015, as this case neared the end of discovery, Mr. Coddington and Mr. Erwin were indicted on two counts of securities fraud and thirteen counts of wire fraud stemming from the conduct alleged in this action. *See United States v. Daniel Dirk Coddington and Jesse W. Erwin, Jr.*, No. 15-cr-00383-RBJ (D. Colo., filed Oct. 5, 2015). Ultimately, Mr. Erwin pled guilty to one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. § 240.10b-5, and one count of wire fraud, in violation of 18 U.S.C. § 1343. He was sentenced to 58 months of imprisonment. Mr. Coddington was convicted at trial on all counts, but his conviction was later reversed on the basis that he died while his appeal was pending.

The Commission filed the instant Motion for Summary Judgment on August 31, 2020. (Doc. # 240.) On September 17, 2020, Mr. Erwin moved for an extension of time to file a response to the Motion, which this Court granted. (Doc. ## 247, 255.) Pursuant to the Court's Order on Mr. Erwin's motion for extension of time, Mr. Erwin's response was due on or before October 5, 2020. (Doc. # 255.) However, no response to the Motion was ever filed.

## II. <u>LEGAL STANDARDS</u>

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply

rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   DISCUSSION

In its Motion, the Commission moves for summary judgment on both of its claims against Mr. Erwin—i.e., its Second Claim for Relief for fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, and its Third Claim for Relief for fraud in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"). The Commission also moves the Court to enjoin Mr. Erwin from future violations of those provisions, to order disgorgement of Mr. Erwin's ill-gotten gains of $1,452,409.62, plus prejudgment interest of $554,222.27, and to deem Mr. Erwin's disgorgement and prejudgment interest obligations satisfied by the $18,021,669.74 restitution order entered against him in the related criminal action.

The Court notes at the outset that Mr. Erwin failed to file a response to the instant Motion for Summary Judgment, despite the continuance granted by this Court. In so doing, Mr. Erwin waived the right to file a response and confesses all facts asserted and properly supported in the Commission's Motion for Summary Judgment. *Murray v. City of Tahlequah, Okl.*, 312 F.3d 1196, 1199 (10th Cir. 2002). When a nonmoving party fails

4

to respond to a motion for summary judgment, the district court may grant the motion only after "first examining the moving party's submission to determine [whether] it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.* As the Court concludes herein that the Commission has met its initial burden, the Court grants the Motion for Summary Judgment.

### A.   LIABILITY

For the following reasons, the Court concludes that summary judgment is warranted on the Commission's Second and Third Claims for Relief because Mr. Erwin's admissions of securities fraud in his Plea Agreement and Statement of Facts Relevant to Sentencing ("Plea Agreement") in *United States v. Erwin*, Case No. 15-cr-00383-RBJ-2, establish his violations of Section 10(b) of the Exchange Act, Rule 10b-5 thereunder, and Section 17(a) of the Securities Act.[1]

---

[1] The doctrine of collateral estoppel provides that a prior judgment "precludes litigation [in a second suit] of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co v. Shore*, 439 U.S. 322, 327 n.5 (1979). "It is well established that a prior criminal conviction may work as estoppel in favor of the Government in a subsequent civil proceeding." *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 568 (1951); *see also Klein v. Commissioner of Internal Revenue*, 880 F.2d 260 (10th Cir. 1989). Indeed, summary judgment on the basis of collateral estoppel in Commission civil enforcement actions is routinely granted based upon a criminal conviction for the same conduct. *See, e.g., SEC v. Gruenberg*, 989 F.2d 977 (8th Cir. 1993); *SEC v. Freeman*, 290 F. Supp. 2d 401, 405-06 (S.D.N.Y. 2003); *Smith v. SEC*, 129 F.3d 356, 362 (6th Cir. 1997); *SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994). Upon review of the Motion, the case file, and the Plea Agreement, the Court finds that Mr. Erwin would be collaterally estopped from relitigating his admissions in the criminal action because (1) Mr. Erwin was a party to the prior litigation; (2) the issues presented in this case are in substance the same as those resolved in the earlier litigation; (3) the controlling facts or legal principles have not changed significantly since the earlier judgment; and (4) no special circumstances warrant an exception to the normal rules of preclusion. *See Klein*, 880 F.2d at 262–63 (citing *Montana*, 440 U.S. 147, 153–55 (1979)).

1. <u>Violation of 10(b) of the Exchange Act and Rule 10b-5</u>

To prove a claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, the Commission must demonstrate that the defendant, with scienter, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce or of the mails, directly or indirectly: (a) employed a device, scheme or artifice to defraud; (b) made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in an act, practice or course of business which operated or would operate as a fraud or deceit upon purchasers of securities. 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5.

In pleading guilty to securities and wire fraud, Mr. Erwin admitted that he intentionally operated a fraud, obtained money or property by means of untrue statements of material fact, and used interstate commerce to do so. He admitted, in relevant part, as follows:

> At all relevant times, the investments in the CMO Loan Program offered and sold by defendant ERWIN and co-defendant CODDINGTON constituted "securities" in the form of an investment contract. At all relevant times, co-defendant CODDINGTON and defendant ERWIN solicited money for the purchase of CMOs, which were securities in the form of bonds.
>
> On April 19, 2011, defendant ERWIN sent to a principal of the Entity Investor a letter that falsely stated, "Mr. Daniel Coddington has an earned reputation for excellence and veracity of the highest nature in the financing world from which he operates.... He does what he says he will do and he does it without excuses or complaint." Based on his participation in the failed CMO Trade Program, defendant ERWIN knew that these statements about co-defendant CODDINGTON were false.

> \* \* \*
>
> On April 20, 2011, in furtherance of the securities fraud scheme, co-defendant CODDINGTON and defendant ERWIN both signed a "Non Recourse Loan Agreement" with S.T. on behalf of the Entity Investor in which S.T. agreed to provide $4,500,000 to Golden Summit for the purpose of participating in the CMO Loan Program. This agreement constituted the sale of a security.
>
> On April 20, 2011, co-defendant CODDINGTON and defendant ERWIN both signed another "Non Recourse Loan Agreement" with K.C. on behalf of the Entity Investor in connection with the CMO Loan Program. Both of these "Non Recourse Loan Agreements" [signed by Erwin and Coddington] falsely guaranteed the Entity Investor's $4,500,000 principal investment required under each loan agreement for a total of $9,000,000. In fact, at the time co-defendant CODDINGTON and defendant ERWIN signed the agreements with the Entity Investor, co-defendant CODDINGTON and defendant ERWIN had no intention of returning the Entity Investor's $9,000,000 principal investment under any circumstance. Additionally, both of these "Non Recourse Loan Agreements" with the Entity Investor falsely stated that, once the Entity Investor's money was received into an account controlled by CODDINGTON or ERWIN, the purchase of the CMOs would occur in approximately one banking day. The agreements further falsely stated that the funding process for the loan on the CMO's would take approximately three banking days from the time the CMOs were obtained.
>
> In connection with the securities fraud scheme, co-defendant CODDINGTON and defendant ERWIN used, and caused other[s] to use, the mail and interstate wires, including emailing both the "Non Recourse Loan Agreements" from Colorado to the Entity Investor, which was located in Georgia.
>
> Of the $9,000,000 Golden Summit received from the Entity Investor, co-defendant Coddington and defendant ERWIN spent only approximately $6.2 million on purchasing CMOs. They diverted the remained of the money for their personal use and for purposes other than for purchasing CMOs.

(Doc. # 241 at 20–22.)

As set forth above, Mr. Erwin's Plea Agreement establishes each of the elements of a Section 10(b) and Rule 10b-5 claim. Accordingly, the Court finds that the Commission has met its burden of demonstrating that no genuine issues of material fact

remain for trial, it is entitled to judgment as a matter of law, and summary judgment on this claim is appropriate.

      2.    <u>Violation of Section 17(a) of the Securities Act</u>

To prove a claim under Section 17(a), the Commission must show that the defendant, with scienter, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce, or by the use of the mails, directly or indirectly: (1) employed a device, scheme or artifice to defraud; or (2) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) engaged in a transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

As with the Section 10(b) and Rule 10b-5 claim, the Court finds that the foregoing admissions from Mr. Erwin's Plea Agreement also establish each of the elements of a Section 17(a) claim. (Doc. # 240 at 22.) Accordingly, summary judgment is appropriate on this claim as well.

**B.    DISGORGEMENT**

The Court has authority to order disgorgement under Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5). In *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020), the Supreme Court affirmed a district court's authority to order disgorgement under Section 21(d)(5) "that does not exceed a wrongdoer's net profits and is awarded for victims." The Court stated that the "equitable nature of the profits remedy generally requires the

SEC to return a defendant's gains to wronged investors for their benefit," joint and several liability for disgorgement must comport with equitable principles, and disgorgement must be limited to a defendant's net profits, excluding legitimate expenses. *Id.* at 1948–50.

The Commission has set forth, in the Declaration of Kerry Matticks, that Mr. Erwin received a net profit of $1,452,409.62 in connection with the fraud perpetrated on Golden Summit's investors. (Doc. # 241 at 6.) It seeks disgorgement of Mr. Erwin's net profits but requests that the disgorgement be deemed satisfied by the higher restitution amount, $18,021,669.74, ordered in the criminal action against him. *See* (*id.* at 45 (Amended Judgment)).

The Court finds that the disgorgement award requested by the Commission in this case is consistent with *Liu*. Specifically, the Court finds that ordering disgorgement in the amount of $1,452,409.62, and deeming that obligation to be subsumed within the existing restitution order, is consistent with the principles that disgorgement must not "exceed a wrongdoer's net profits" and that a wrongdoer should not be required to give up his unjust gains twice. *See Liu*, 140 S. Ct. at 1943; *see also SEC v. Palmisano*, 135 F.3d 860, 863 (2d Cir. 1998) ("Defendant is only required to give back the proceeds of his securities fraud once."). However, the Court declines to deem the obligation "satisfied," as there is no indication that Mr. Erwin has paid down his $18,021,669.74 restitution obligation against him.

### C.  PREJUDGMENT INTEREST

Generally, disgorgement includes prejudgment interest to ensure that wrongdoers do not profit from their illegal conduct. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972); *SEC v. Cross Fin. Servs.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995). In this case, the Commission moves the Court to order Mr. Erwin to pay prejudgment interest on the disgorgement award of $1,452,409.62 for the period of December 31, 2011, a date by which Mr. Erwin had received his net profits from the fraud, to July 1, 2021. *See* (Doc. # 241 at 6–7, 47–48). Upon consideration of the Motion, the case file, and the facts and circumstances before the Court, the Court agrees that an award of prejudgment interest is appropriate in this case.

Calculating prejudgment interest at the rate used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2), the amount of prejudgment interest owed by Mr. Erwin is $554,222.27. (*Id.*) Thus, Mr. Erwin owes a total amount of $2,006,631.89 in disgorgement and prejudgment interest in connection with this case, but this amount is subsumed within Mr. Erwin's outstanding $18,029,664.74 restitution obligation. *See Liu*, 140 S. Ct. at 1943 (explaining disgorgement must not "exceed a wrongdoer's net profits").

### IV.  CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Motion for Summary Judgment Against Jesse W. Erwin, Jr. (Doc. # 240) is GRANTED;
- summary judgment shall enter in favor of Plaintiff Securities and Exchange

Commission and against Defendant Jesse W. Erwin, Jr., on Plaintiff's Second Claim for Relief for fraud in violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Plaintiff's Third Claim for Relief for fraud in violation of Section 10(b) and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5;

- Mr. Erwin is hereby ENJOINED from further violations of the securities laws; and
- Mr. Erwin is ORDERED to pay $1,452,409.62 in disgorgement and $554,222.27 in prejudgment interest, but this obligation is subsumed within Mr. Erwin's existing restitution obligation in the related criminal action—*United States v. Erwin*, Case No. 15-cr-00383-RBJ-2.

DATED: July 29, 2021

                                              BY THE COURT:

                                              CHRISTINE M. ARGUELLO
                                              United States District Judge